# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50238 | **DATE** | 8/29/2001 |
| **CASE TITLE** | TULLEY vs. THARALDSON ENTERPRISES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Tharaldson's motion for summary judgment is granted. This cause is hereby dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | AUG 3 1 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | 36 |
| X | Mail AO 450 form. | | docketing deputy initials | |
| X | Copy to judge/magistrate judge. | | AUG 3 1 2001 | |
| /SEC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

KATHRYN A. TULLEY,            )
                              )
        Plaintiff,            )    No. 99 C 50238
                              )
    v.                        )
                              )
THARALDSON ENTERPRISES, INC., )
                              )
        Defendant.            )

**DOCKETED
AUG 3 1 2001**

## MEMORANDUM OPINION AND ORDER

### I. Introduction

On July 26, 1999, plaintiff Kathryn Tulley filed a three-count complaint against defendant Tharaldson Enterprises, Inc., d/b/a Tharaldson Lodging ("Tharaldson"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (Count I), the Equal Pay Act ("EPA"), id. § 206(d) (Count II), and Title VII of the Civil Rights Act, as amended ("Title VII"), 42 U.S.C. § 2000e et seq. (Count III). The court has jurisdiction pursuant to 29 U.S.C. § 626(c) (ADEA), id. § 216(b) (EPA), and 42 U.S.C. § 2000e-5(f) (Title VII), and venue is proper in this district and division, see 28 U.S.C. § 1391, 42 U.S.C. § 2000e-5(f)(3) (Title VII). Currently pending before the court is Tharaldson's motion for summary judgment, filed pursuant to Fed.R.Civ.P. 56.

### II. Preliminary Matters

Tulley has not complied with LR 56.1(b)(3), in that: (1) she includes statements in her response to Tharaldson's LR 56.1(a)

statement of facts which are not supported by specific references to affidavits, parts of the record or other supporting materials; (2) at times she relies on an eight-paragraph "response" to Tharaldson's motion for summary judgment which completely lacks any proper citation to the record; and (3) at times she cites generally to a deposition without citing any page number(s) or cites to unspecified deposition exhibits. None of these approaches satisfy LR 56.1(b)(3)'s requirements.

It is not the court's job to sift through the record to ascertain whether genuine issues of material fact exist. See Ehrhart v. Secretary of Health and Human Serv., 969 F.2d 534, 537 n.5 (7th Cir. 1992) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)). LR 56.1 serves an important role in the summary judgment procedure, by informing the court of the evidence and arguments in an organized way, facilitating its determination of the necessity for trial. Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995). An answer in a LR 56.1(b) response that does not deny the allegations in the numbered paragraph of a LR 56.1(a) statement with citations to supporting evidence in the record is deemed an admission. Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000). Thus, virtually all of Tharaldson's facts are accepted as true. See id.; see also Schneiker v. Fortis Ins.

Co., 200 F.3d 1055, 1057 (7th Cir. 2000). The court also does not consider Tulley's "response" to be in conformity with LR 56.1(b)(3)(B) and will not take into account the unsupported facts contained therein. See Schneiker, 200 F.3d at 1057.

### III. **Facts**

Tharaldson develops and operates several hundred hotels around the United States. (LR 56.1(a) ¶¶ 6, 8) Tulley (whose date of birth is July 22, 1948) worked at Tharaldson from April 1992 until September 1, 1998; her most recent position was General Manager of Tharaldson's Rockford Residence Inn. (Id. ¶ 3) Tulley claims she was a victim of age and sex discrimination in terms of promotions and wages, was subjected to a hostile work environment and retaliation, and was terminated because of her sex. (Id. ¶ 4) At the time of her termination, Tulley's Area Director was Rich Hoffman (id. ¶ 81), and he reported to Aimee Fyke, a Vice-President of Operations (formerly a Regional Vice-President) since January 1997. (Id. ¶ 14)

From 1996 through 1998, the base salary ranges and median average salary of General Managers were as follows:

| Expected Annual Hotel Revenue | Salary Range | Median Salary |
|---|---|---|
| $1,000,000 and up | $25,000-$34,000 | $28,000 |
| $800,000-$999,999 | $23,000-$30,000 | $25,000 |
| $650,000-$799,999 | $20,000-$27,000 | $22,000 |
| $0-$649,999 | $16,000-$25,000 | $20,000 |

(Id. ¶ 19) Doug Dobmeier, the Vice-President of Operations and later the Senior Vice-President of Operations, set these

3

guidelines. (Id. ¶¶ 14, 16) Tulley's starting salary as General Manager of the Rockford Resident Inn was $28,000. (Id. ¶ 26) Her salary was then raised to $30,000 in February 1997, to $32,000 in February 1998, and to $34,000 in May 1998. (Id. ¶ 27)

From 1992 until July 1998, Tulley was not disciplined. In July 1998, Fyke stopped off at the Rockford Residence Inn to meet with Hoffman. (Id. ¶ 115) While there, an employee approached Fyke and complained to her about Tulley "getting out of hand," and identified several specific problems. (Id. ¶ 117) Fyke told Hoffman to investigate the employee's complaints. During Hoffman's interviews, several employees spoke of problems with Tulley, which several confirmed in writing. (Id. ¶ 122) Based on the employees' feedback, Fyke was concerned about the level of employee discontent. (Id. ¶ 125) As a result of the employees' complaints, Fyke and Hoffman issued Tulley a written warning on August 7, 1998. (Id. ¶¶ 133-34)

Shortly thereafter, Fyke and Hoffman learned that Tulley may have fabricated a gift certificate to cover up a friend's free stay at the hotel. (Id. ¶ 140) On August 27, 1998, they returned to the hotel. They spoke with Tulley, who denied fabricating the gift certificate. (Id. ¶ 142) However, the Assistant General Manager, Heather Miller, admitted that Tulley told her to fabricate the gift certificate. (Id. ¶ 144) Fyke believed Miller for several reasons: the gift certificate was

4

issued in the friend's maiden name, and Fyke felt this was done to hide the friend's "true" identity; Fyke felt Miller had no motivation to lie and, in fact, stood to get in trouble herself for her role; and, the gift certificate was allegedly issued in December 1997 but was due to expire on July 7, 1998, less than one year later, even though the hotel's gift certificates usually lasted one year. (Id. ¶ 145) Fyke concluded she could no longer trust Tulley and fired her. (Id. ¶¶ 150-51)

## IV. **Analysis**

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 669 (7th Cir.), cert. denied, 121 S. Ct. 1603 (2001). A genuine issue of material fact exists only when a reasonable jury could find for the nonmoving party based on the record as a whole. Bekker, 229 F.3d at 669. The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000); EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 436 (7th Cir. 2000). A complete failure of proof concerning

5

an essential element of a case necessarily renders all other facts immaterial. Ribando v. United Airlines, Inc., 200 F.3d 507, 509 (7th Cir. 1999).

A. **Promotion**

Because Tulley has not produced any direct evidence of discrimination, the court will analyze her claim under the indirect, McDonnell Douglas burden-shifting method. Under this approach, she must initially establish a prima facie case of unlawful discrimination by demonstrating: (1) she is in a protected class (female or above the age of forty); (2) she was qualified for the promotion; (3) she did not receive the promotion despite her qualifications; and, (4) a person not in the protected class (male or substantially younger) was promoted instead. Schaffner v. Glencoe Park Dist., 256 F.3d 616, 620 (7th Cir. 2001) (ADEA); Hasham v. California State Bd. of Equalization, 200 F.3d 1035, 1044 (7th Cir. 2000) (Title VII).

Tulley sought a promotion to the position of General Manager of the Rockford Residence Inn in January 1996. (LR 56.1(a) ¶ 53) Although initially a younger male applicant, Ken DeCook, was chosen, he did not work out and Tulley was offered the position in April 1996. (Id. ¶¶ 55-58) To the extent Tulley is basing her ADEA and Title VII claims on the denial of the promotion in January 1996, they are time-barred. She filed her discrimination charge with the Equal Employment Opportunity Commission ("EEOC")

6

on February 12, 1999. (Compl. ¶ 19) The January 1996 promotion occurred well before Title VII's 300-day limitations period, see 42 U.S.C. § 2000e-5(e)(1); Russell v. Board of Tr. of Univ. of Ill. 243 F.3d 336, 343 (7th Cir. 2001), and she has offered no evidence indicating the continuing violation doctrine applies, see, e.g., Place v. Abbott Lab., 215 F.3d 803, 808 (7th Cir. 2000) (failure to be promoted is a single, significant event, not a continuing act, to which the continuing violation doctrine typically would not apply), cert. denied, 121 S. Ct. 768 (2001).

Likewise, Tulley's dispute with certain promotions involving Area Director ("AD") positions (LR 56.1(a) ¶¶ 68, 70-92), is also time-barred. Roy Miles was initially promoted to the AD position in late summer, 1994, Dean Manternach was initially hired into the AD position in April 1994, Hoffman was initially promoted in November 1995, and Darren Schaefer initially became an AD between July 1994 and April 1996, or before. (Id. ¶¶ 3, 73, 78, 83, 88)

This leaves certain AD positions which became available when Tulley was the General Manager at the Rockford Residence Inn. (Id. ¶¶ 63, 76, 81) Tharaldson argues Tulley's promotion claims fail because she never applied for any AD positions. (LR 56.1(a) ¶ 59) When a company has a formal system of posting job openings and allowing employees to apply for them, a plaintiff's failure to apply could prevent her from establishing a prima facie case. Loyd v. Phillips Bros., Inc., 25 F.3d 518, 523 (7th Cir. 1994);

7

Box v. A & P Tea Co., 772 F.2d 1372, 1376-77 (7th Cir. 1985), cert. denied, 478 U.S. 1010 (1986). Miles, Hoffman, and Schaefer applied for posted AD positions and were hired. (LR 56.1(a) ¶¶ 73, 83, 90) However, the record shows a posting procedure was not always followed (see, e.g., id. ¶¶ 63, 79), and also shows Tulley did not learn about open AD positions until after they had been filled. (Id. ¶ 60) Given these circumstances, she should not be penalized for failing to apply; the McDonnell Douglas approach should not be rigidly or mechanically applied. See Taylor v. Canteen Corp., 69 F.3d 773, 781 (7th Cir. 1995) (although expressing a general willingness to work is typically insufficient to support a failure-to-promote claim, a plaintiff who was unaware of a job opening should not be penalized for failing to apply).

Nevertheless, Tulley's promotion claims fail because the decisions she is challenging were filled by Manternach[1] and Hoffman, both of whom were already ADs when they assumed the AD positions at issue. Tulley has produced no evidence from which a reasonable factfinder could conclude she was qualified for the AD position, nor any evidence showing how she was more qualified

---

[1] Tulley appears to be contesting two decisions involving Manternach. At some point (the record is not clear when), an AD position out west was created, which Manternach filled. (LR 56.1(a) ¶ 63) In addition, at some point when Tulley was the General Manager at the Rockford Residence Inn, Manternach replaced Miles. (Id. ¶ 76)

8

than Manternach and Hoffman. As for Hoffman's AD position (created when he took over for Manternach in April 1998), Tulley stated she was not interested in the position. (LR 56.1(a) ¶ 67) Tulley appears to be arguing that she would have been interested in Manternach's old position (filled by Hoffman) but it is not the court's job to question why Tharaldson placed Hoffman in Manternach's old position, thereby opening up Hoffman's position, rather than simply filling Manternach's position with someone new. See Schaffner v. Glencoe Park Dist., 256 F.3d 616, 622 (7th Cir. 2001) (court does not sit as super-personnel department, reexamining business decisions). The bottom line is Tulley has not produced any evidence to support a reasonable inference that she was more qualified for the positions at issue than Manternach or Hoffman, both of whom had been her boss at one time.

**B.  Wages**

The EPA prohibits sex-based wage discrimination. See 29 U.S.C. § 206(d)(1); Snider v. Belvidere Township, 216 F.3d 616, 619 (7th Cir. 2000). To establish a prima facie case under the EPA, a female plaintiff must show: (1) different wages are paid to male employees; (2) the employees do equal work which requires equal skill, effort, and responsibility; and (3) the employees have similar working conditions. Snider, 216 F.3d at 619. Because she does not have direct evidence of discrimination, to support a Title VII or ADEA wage discrimination claim, Tulley

9

must follow the McDonnell Douglas burden-shifting approach. See Ghosh v. Indiana Dep't of Envtl. Mgmt., 192 F.3d 1087, 1094 (7th Cir. 1999) (Title VII); DeLoach v. Infinity Broad., 164 F.3d 398, 400-01 (7th Cir. 1999) (ADEA). And, unlike the EPA, under Title VII and the ADEA Tulley must show an intent to discriminate; that is, she must establish that the pay disparity resulted from an actual desire on Tharaldson's part to pay her less than male (or younger) employees because of her gender (or age). See Ghosh, 192 F.3d at 1094. Under any of the statutes at issue, Tulley must establish she was paid less than the male employees at issue. See Snider, 216 F.3d at 619-20 (EPA); Johnson v. University of Wisc.-Eau Claire, 70 F.3d 469, 478 (7th Cir. 1995) (Title VII).

When Tulley first became a General Manager, her salary was $28,000, which was within Tharaldson's salary guidelines. (LR 56.1(a) ¶¶ 17, 19, 26) In 1997, her salary was raised to $30,000; in February 1998, it was increased to $32,000, and in May of that year it was raised to $34,000. (Id. ¶ 27) Tulley compares her salary to that of John Porior, James Shaver, and Nathan Biermann, and alleges in her complaint that Porior was earning over $35,000 per year, Shaver was earning $30,000 per year, and Biermann was earning $30,000 per year. (Compl. ¶ 36) On its face, Tulley's claim against Shaver and Biermann will not stand because both male employees were earning *less* than her.

10

See Snider, 216 F.3d at 619-20 (EPA); Johnson, 70 F.3d at 478 (Title VII).[2]  Tulley's claim against Porior also fails because he was not performing equal work with equal skill, effort, and responsibility.  Rather, Porior was a Lead General Manager, which is a higher position with more responsibility than Tulley's General Manager position.  (LR 56.1(a) ¶¶ 9, 23, 30, 35)

As for her ADEA claim, Tulley also seeks to compare herself to Liz Watson, a Regional Sales Manager.  (LR 56.1(a) ¶ 42)  Her claim based on Watson is problematic for several reasons.  Because Watson is female, the only possible statute she could be relying on is the ADEA.  Although the record is not clear as to when the disparity existed between Tulley's salary and Watson's salary, the record shows Watson's last day of employment with Tharaldson was March 6, 1997.  (Id. ¶ 48)  Thus, any ADEA claim is time-barred.  Aside from any statute of limitations issue, the claim fails for a complete lack of proof.  Tulley has offered no evidence as to how much Watson was paid.  She speculates that Watson made several thousand dollars more than her (id. ¶ 45), but sheer speculation fails to carry the day at the summary judgment stage.  Jordan v. Summers, 205 F.3d 337, 344 (7th Cir. 2000) (conclusory statements, indications of opinion or

---

[2] Tulley apparently is claiming Biermann was earning more than her because for a short period of time he was receiving two paychecks.  However, the record shows this was an administrative error and Biermann ultimately refunded the money to Tharaldson. (LR 56.1(a) ¶¶ 36-38)

11

speculation do not produce a genuine issue for trial under Rule 56(c)). In addition, Tulley has offered no evidence as to what Watson's job duties were. It appears, just from her different job title, that Watson's job duties were not the same as Tulley's. For all these reasons, Tulley's claim based on Watson's salary fails.

C. **Hostile Work Environment**

Tulley's Title VII sexual harassment claim is based on the following: (1) an e-mail message sent on August 24, 1998, from Hoffman to Tulley, wherein Hoffman questioned who worked the prior weekend and stated that Tulley working forty-two hours per week was not enough; (2) Hoffman stopped by the Rockford Residence Inn to speak to the staff when Tulley was not present; and, (3) after issuing Tulley a written warning, Hoffman instructed her not to speak to her staff about it. (LR 56.1(a) ¶ 98-99)

Title VII is not a general civility code for the American workplace. See Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80 (1998). Rather, Tulley must show the workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of her employment. See id. at 78. The critical issue is whether the harassment about which she complains occurred because of her sex. See id. at 80. None of the conduct about which Tulley

12

complains is sexual in nature. While it is true that conduct need not be explicitly sexual to create a hostile environment, see, e.g., Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 345 (7th Cir.), cert. denied, 528 U.S. 874 (1999), there must be some evidence the purpose of Hoffman's conduct was Tulley's gender. See id. at 346. There is no evidence Hoffman treated Tulley any differently than the other General Managers he supervised. (LR 56.1(a) ¶ 105) In addition, the court finds Tulley has not produced sufficient evidence from which a reasonable factfinder could conclude she was subjected to sexual harassment so severe or pervasive that it altered the conditions of her employment and created an abusive work environment.

D. **Retaliation**

Tulley claims she was a victim of retaliation after complaining to a superior about age discrimination. (LR 56.1(a) ¶ 111) However, a retaliation theory did not appear in her underlying discrimination charge. (Compl. Exh. II) Thus, any retaliation claim is beyond the scope of her underlying charge and is barred. See, e.g., Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1117-18 (7th Cir. 2001); Heuer v. Weil-McLain, 203 F.3d 1021, 1022-23 (7th Cir. 2000).

E. **Discharge**

In addressing Tulley's claim based on her discharge, the court will proceed directly to the pretext stage of the analysis.

See, e.g., Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 398 (7th Cir. 1997), cert. denied, 523 U.S. 1118 (1998). Tulley has not produced any evidence from which a reasonable factfinder could conclude Fyke's stated reasons for her discharge are pretextual. Tulley continues to dispute whether she did, in fact, engage in misconduct, but that is irrelevant at this point. The issue is whether Fyke honestly believed her stated reasons. See Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1310 (7th Cir. 1997). Tulley admits employees complained to management about her. (LR 56.1(a) ¶¶ 116-18, 121-22, 140, 143-44) It is accepted as true Miller told Fyke and Hoffman that Tulley told her to fabricate the gift certificate. (Id. ¶ 144) While Tulley argues that Fyke should have believed her over Miller, she has produced no evidence to dispute Fyke's suspicions regarding use of the friend's maiden name and the fishy expiration date on the gift certificate.

## V. Conclusion

Tulley's objections to B.J. Holling's letter is denied as moot, as it did not affect the court's analysis. For the reasons stated above, Tharaldson's motion for summary judgment is granted and this cause is hereby dismissed in its entirety.

E N T E R :

_____
**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: August 29, 2001